*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BIRGETTA WALKER,

Plaintiff-Appellee,

v

CITY OF ROMULUS,

Defendant-Appellant.

UNPUBLISHED
February 11, 2020

No. 345400
Wayne Circuit Court
LC No. 17-011360-NO

Before: MURRAY, C.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Defendant, the City of Romulus, appeals of right the trial-court order denying its motion for summary disposition, filed under MCR 2.116(C)(7) (claim barred by immunity granted by law), (8) (failure to state a claim upon which relief can be granted), and (10) (no genuine issue of material fact and moving party entitled to judgment as a matter of law). We reverse and remand with instructions for the trial court to enter an order granting summary disposition to the city.

## I. BACKGROUND

On September 13, 2015, plaintiff, Birgetta Walker, was attending her church located in the City of Romulus. After services, she left and walked across the road to reach her parked car. In the middle of the road, plaintiff stepped in or on something on the surface of the road and fell, sustaining physical injuries. On January 5, 2016, plaintiff sent the city a letter providing notice of her injury. In that notice, plaintiff stated that her "heel got caught in [a] large, rotted and deteriorated section of concrete roadway, causing claimant to fall and sustain injury." The notice letter did not claim that plaintiff fell in a crosswalk.

On July 27, 2017, plaintiff filed this personal-injury lawsuit against the city. Plaintiff pleaded her complaint as if she were pursuing a typical premises-liability claim against the owner of real property, alleging that she was a "business invitee" and that she sustained injuries "on property under the dominion, control and ownership" of the city. Plaintiff alleged that the city owed her a duty to maintain its premises as a reasonably prudent person would do under the same or similar circumstances, and that the city violated this duty in several ways, including but not limited to a failure to construct the premises in a manner suitable and safe under the circumstances,

-1-

and a failure to properly illuminate the premises so that any dangerous or hazardous conditions would be apparent to plaintiff.

As it pertains to the highway exception to governmental immunity, plaintiff alleged that "a hazardous and dangerous condition" existed on "Horace Jackson Street, near Martin Pl., in the vicinity near Romulus Community Baptist Church, which said church is located at 6200 4th Street, Romulus, MI." Plaintiff alleged that this condition "constituted a tripping hazard, as a result of the existence of a loose, rotted and deteriorated section of concrete roadway." Plaintiff further alleged that this "tripping hazard" qualified as a "hazard to travel" and a "defective condition" that fell within an exception to governmental immunity. Finally, plaintiff alleged that the condition of the roadway caused her "to trip and lose her balance due to the tripping hazard," causing her to sustain severe physical injuries. With regard to the amount of time the allegedly defective condition had existed before she tripped and fell on it, plaintiff alleged that, "as will be shown through the course of discovery, it is evident that the defective condition was present for more than thirty days at the time the Plaintiff was caused to be injured." Plaintiff did not allege in her complaint that she fell in a crosswalk.

On March 5, 2018, plaintiff testified at her deposition regarding the circumstances surrounding her fall and the alleged defect on which she fell. Plaintiff stated that she left church at about 2:00 p.m., and that it was a clear day. Plaintiff was walking in the "middle of the street," looking toward her parked car, and she "just went down" on a "little pothole" or "some type of hole or something in the street." When asked whether she tripped and fell in the street, plaintiff answered: "I don't know if you call it north or south, but I was crossing the street after I came out of the parking lot going towards my car. I was on the opposite side of the church. . . . [T]he lady that was parked on the street where I fell in the middle of the street, they hopped up and they picked me up." The city's counsel attempted to clarify whether plaintiff was walking in a crosswalk when she fell in the "middle of the street":

> *Q.* When you were crossing the street, were you walking in a crosswalk? I'm trying to get an area, a better idea where you fell. Were you walking in a crosswalk when you fell?
>
> *A.* In a crossway. I was like in the middle of the street.
>
> *Q.* Okay.
>
> *A.* I had come out of the parking lot, the driveway, I come out of the parking lot driveway to go across the street. I was walking in the street to the left-hand side.
>
> *Q.* I'm sorry. So is it your testimony you were walking in the middle of the street at the time of this incident?
>
> *A.* Yes. I had crossed walking in the middle going towards my car. Wasn't too far from my car.

When the city's counsel asked plaintiff to describe location of her fall and the alleged defect in the street on which she fell, the following exchange occurred:

*Q.* And as you're walking towards your car that's parked in the street, you're walking in the middle of the street, correct?

*A.* Yes. Over to the left, not directly in the middle of the street. I was in the street, because I was parked on the side, where you open up the door and you in the street.

*Q.* So you're walking in the area of the street where cars have to travel to drive in the street, yes?

*A.* Yes.

*Q.* And as you're walking in the street, your left foot gets caught in something?

*A.* Yes, and I just went down.

*Q.* And what did your left foot get caught in that caused you to go down?

*A.* I have no idea.

*Q.* Okay.

*A.* I just went down.

Plaintiff stated that, after she fell, bystanders helped her to her parked car, and she looked back at the location of her fall. Plaintiff further stated that, one week after her trip and fall, she returned to the place where she normally parked her car near the church and took a photograph of the location where she fell. The photograph was referenced at her deposition, and contained a circle with a handwritten notation "this one," to designate the alleged defect on which she fell. Plaintiff expressly denied that she saw any loose stones in the area of the road where she fell.

After the close of discovery, the city moved for summary disposition under MCR 2.116(C)(7), (8), and (10), raising three arguments. First, the city argued that plaintiff had failed to plead in avoidance of governmental immunity because her complaint was "entirely devoid of factual allegations" that the alleged defect in the roadway was outside the scope of the city's governmental immunity. Second, the city argued that plaintiff had failed to present any evidence that the alleged defect made the highway not in reasonable repair such that it was not reasonably safe and convenient for public travel. With regard to plaintiff's photograph of the alleged defect referenced at her deposition, the city argued that it was "of horrible quality" and that it "fails to establish any defect at all." The city argued, "What it does appear to show, however, is nothing more than a slight indentation in the concrete of the street, of narrow width and length, that could be readily and easily avoided and even walked upon if someone were paying attention." Finally, the city argued that plaintiff had failed to produce any evidence that the city knew or should have known of the alleged defect before plaintiff's trip and fall, let alone 30 days before her fall.

Plaintiff opposed the motion, arguing that a genuine issue of material fact existed regarding whether the cloak of governmental immunity applied to the city. Plaintiff responded to each of

the city's three arguments. First, plaintiff argued that she had pleaded a case in avoidance of governmental immunity, citing the statutory authority for the grant of governmental immunity, MCL 691.1407, and the highway exception to that immunity, MCL 691.1403, but referencing none of the actual allegations contained in her complaint. Second, plaintiff argued that she had presented evidence that the alleged defect made the highway not in reasonable repair such that it was not reasonably safe and convenient for public travel, citing the notice letter that she provided to the city, her deposition testimony, and the photographic evidence that she attached to her trial-court brief.

Third, plaintiff argued that she had established a genuine issue of material fact, through the photographic evidence that she submitted, that the alleged defect existed in the roadway for a "long enough period of time where Defendant should have known" about it. Plaintiff devoted a single paragraph of her trial-court brief to this argument. Plaintiff referenced multiple alleged defects on the road in question and argued that "looking at the nature of the defects, it is clear from the photographs that there is faded asphalt patches in some of these defects," including the one on which plaintiff fell. Plaintiff argued that the existence of these "faded asphalt patches" proved that the city "at one point tried to remedy the defect" that caused her fall. She further argued that the "faded color of the asphalt pack," as well as "loose stones evident in the pictures around the area of the fall clearly indicate that the defect continued and the repair failed" over a lengthy period of time. Plaintiff argued that the photographic evidence therefore gave rise to a reasonable inference that the city should have known about the alleged defect before plaintiff fell.

In her brief opposing the motion for summary disposition, plaintiff argued that she "fell in the improved portion of the highway intended not only for vehicular but pedestrian traffic" and asserted that the alleged defect was a "deteriorated portion of the highway." Plaintiff argued that she "testified at her deposition that she was in a crosswalk in the middle of the street when she fell," citing the deposition testimony set forth above. Yet, plaintiff did not argue that the location of the fall in an alleged crosswalk—as opposed to some other portion of the street—defeated the city's claim to governmental immunity.

Plaintiff attached several exhibits to her trial-court brief opposing defendant's motion for summary disposition. First, plaintiff attached the poor-quality photograph of the alleged defect that was taken one week after her trip and fall, on which a circle had been marked around the alleged defect, along with the handwritten notation "this one." In addition, plaintiff attached several more photographs that apparently depicted areas of the street in question, other than the alleged defect on which plaintiff fell. None of the photographs that plaintiff attached to her brief appear to depict a crosswalk. Finally, plaintiff attached to her trial-court brief a copy of her deposition transcript, her complaint, and the notice letter that she sent to the city.

On July 27, 2018, the trial court held a hearing on the city's motion for summary disposition. At that hearing, plaintiff's entire argument regarding the nature of the alleged defect was to state that "I think what constitutes reasonable repair is an issue for the jury." Meanwhile, regarding the issue of notice, plaintiff relied solely on the photographs that she had attached to her trial-court brief. Plaintiff argued that the photographs were sufficient to illustrate that

> the location where she fell clearly was a pothole that [the city] tried to repair at
> some point in the past, 'cause you can see the asphalt in there, you can see the

-4-

asphalt's faded. You can see loose stones around it and from that you can draw an inference that this condition was in existence for more than 30 days because there is a definite dip in the elevation of that area.

Plaintiff also argued that, because the city had attempted to repair the street at some point in the past, the city was on notice of the alleged defect that arose later, because the city "didn't repair it adequately or it was so long ago when the last time they repaired it that the asphalt then was faded and drawn out of that hole." During oral argument on the motion, plaintiff made no mention of a crosswalk.

At the close of the parties' arguments, the trial court stated its conclusions that plaintiff had properly pleaded her complaint in avoidance of governmental immunity, the alleged defect qualified as an exception to governmental immunity, and a question of fact existed regarding whether the city should have known of the alleged defect. The trial court's analysis of the city's factual and legal issues was as follows:

> Okay. I did read the motions, the responses. The Court finds that Plaintiff did properly plead in avoidance of governmental immunity. The defect alleged is an exception to immunity and there is a question of fact the Defendant knew or should've known of the defect.
>
> It looks as though there was a possible repair in the photos, so for those reasons I'm denying your motion, counsel.

The trial court did not indicate whether it decided the motion under MCR 2.116(C)(7), (8), or (10), and the trial court made no reference to a crosswalk. The trial court subsequently entered an order denying the city's motion for summary disposition.

This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition, as well as the "applicability of governmental immunity and the statutory exceptions to immunity." *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Summary disposition under MCR 2.116(C)(7) is proper "when a claim is barred by immunity granted by law" to a defendant, and to "survive such a motion, the plaintiff must allege facts justifying the application of an exception to governmental immunity." *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). "In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence." *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010).

## B. GOVERNMENTAL IMMUNITY

Under MCL 691.1401 *et seq*., governmental agencies, including cities like defendant, enjoy "broad immunity from tort liability . . . whenever they are engaged in the exercise or discharge of a governmental function." *Plunkett v Dep't of Transp*, 286 Mich App 168, 181; 779 NW2d 263 (2009) (cleaned up); see also MCL 691.1401(a), (d), (e); 691.1407(1). The Legislature enacted several exceptions to the grant of governmental immunity, and those exceptions are the only means by which an individual may bring a tort claim against a governmental agency. *Lash v Traverse City*, 479 Mich 180, 195; 735 NW2d 628 (2007). At issue in this case is the so-called highway exception, which provides, in relevant part:

> (1) Each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. . . . Except as provided in section 2a, the duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [MCL 691.1402(1).]

"[T]he immunity conferred upon governmental agencies is *broad*, and the statutory exceptions thereto are to be *narrowly* construed." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). Accordingly, "[a]n action may not be maintained under the highway exception unless it is clearly within the scope and meaning of the statute." *Hatch v Grand Haven Twp*, 461 Mich 457, 464; 606 NW2d 633 (2000).

In this case, plaintiff was a pedestrian when she tripped and fell. Pedestrians "are not automatically and entirely excluded, as a class, from the protections" of the highway exception to governmental immunity. *Nawrocki*, 463 Mich at 170. Rather, the statutory language of the highway exception imposes a duty on governmental agencies "to protect pedestrians from dangerous or defective conditions in the improved portion of the highway designed for vehicular travel, even when injury does not arise as a result of a vehicular accident." *Id*. at 162 (interpreting a prior version of the statute that includes nearly identical language, except now that language applies to all governmental agencies, not just state and county road commissions). Thus, a pedestrian may recover damages for a personal injury when the injury is proximately caused by a failure of a governmental agency to repair and maintain the improved portion of the highway designed for vehicular travel. *Id*. at 162-163.

The parties do not dispute that the location in which plaintiff sustained her injuries was an "improved portion of the highway designed for vehicular travel." MCL 691.1402(1). Thus, under the first sentence of MCL 691.1402(1), defendant had a duty to maintain the highway "in reasonable repair so that it is reasonably safe and convenient for public travel." MCL 691.1402(1). This phrase "simply refers to the duty to maintain and repair the highway, and states the desired outcome of reasonably repairing and maintaining the highway; it does not establish a second duty

to keep the highway 'reasonably safe.' " *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 167; 713 NW2d 717 (2006), citing *Nawrocki*, 463 Mich at 160. "[T]he Legislature has not waived immunity if the repair is reasonable but the road is nonetheless still not reasonably safe because of some other reason." *Id*. Likewise, "it can also be seen that the converse of this statement is true: that is, the Legislature has not waived immunity where the maintenance is allegedly unreasonable but the road is still reasonably safe for public travel." *Id*. at 168.

"[A]n *imperfection* in the roadway will only rise to the level of a compensable 'defect' when that imperfection is one which renders the highway not 'reasonably safe and convenient for public travel,' and the government agency is on notice of that fact." *Id*. Accordingly, "an injury will only be compensable when the injury is caused by an unsafe condition, of which the [city] had actual or constructive knowledge, which condition stems from a failure to keep the highway in reasonable repair." *Id*. The fact that a road is "bumpy and required frequent patching" does not "invariably lead to the conclusion that the road was not reasonably safe for public travel." *Id*. at 169. Stated another way, a "road in bad repair, or with rough pavement, is not per se one that is not reasonably safe." *Id*., citing *Jones v Detroit*, 171 Mich 608; 137 NW 513 (1912). " 'Nearly all highways have more or less rough and uneven places in them, over which it is unpleasant to ride; but because they have, it does not follow that they are unfit and unsafe for travel.' " *Id*. at 169-170, quoting *Jones*, 171 Mich at 611. Although "[i]t may be that a road can be so bumpy that it is not reasonably safe," to prove her case plaintiff must present evidence that a reasonable city, which knew or should have known of this particular condition, would have understood that it "posed an unreasonable threat to safe public travel and would have addressed it." *Id*. at 169.

### C. CROSSWALKS

On appeal, plaintiff stresses her claim that she fell in a crosswalk. Although plaintiff made a single, fleeting reference at her deposition that she was in a "crossway" when she tripped and fell, it is by no means clear that she fell in a "crosswalk" as that term is understood for purposes of the highway exception to governmental immunity. Furthermore, plaintiff did not raise this argument in response to the city's motion for summary disposition, and the trial court did not rule on this issue. Because this argument was not raised before, addressed, and decided by the trial court, it is not preserved for appellate review. *People v Dupree*, 486 Mich 693, 703; 788 NW2d 399 (2010).

In any event, as explained above, each governmental agency having jurisdiction over a highway has a duty to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." MCL 691.1402(1). For purposes of this statute, the term "highway" means "a public highway, road, or street that is open for public travel. Highway includes a bridge, sidewalk, trailway, *crosswalk*, or culvert on the highway." MCL 691.1401(c) (emphasis added). Although a crosswalk falls within the definition of the term "highway," the statute contains additional language regarding a governmental agency's duty, and liability for breach of that duty, regarding crosswalks. "Except as provided in section 2a, the duty of a governmental agency to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and *does not include sidewalks, trailways, crosswalks*, or any other installation outside of the improved portion of the highway designed for vehicular

travel." MCL 691.1402(1) (emphasis added).[1] This Court has examined this statutory language and has held that when a crosswalk is located inside the improved portion of the highway designed for vehicular travel, the governmental agency having jurisdiction over that location has a duty to maintain the highway, including the crosswalk, in reasonable repair so that it was reasonably safe and convenient for public travel. See *Sebring v Berkley*, 247 Mich App 666, 680-681; 637 NW2d 552 (2001).

As explained below, plaintiff testified that the alleged defect on which she fell was in the surface of the roadway. Whether plaintiff was injured in a crosswalk or not is therefore irrelevant to her claim. The city's duty is the same, regardless of whether plaintiff fell inside or outside a crosswalk. "Because this particular crosswalk is not an installation separate from the roadbed, the highway exception applies." *Id*. at 681. The city was required to maintain the surface of the highway in reasonable repair so that it was reasonably safe and convenient for public travel. MCL 691.1402(1).

## D.  THE ALLEGED DEFECT

On appeal, the city argues that it was entitled to summary disposition because plaintiff failed to establish that the roadway on which she fell contained a defect that rendered the roadway not reasonably safe and convenient for public travel. Citing our Supreme Court's holding in *Wilson*, the city argues that a road in "bad repair" or with "uneven" or "rough" patches is not necessarily a road that is not reasonably safe for public travel, and that a plaintiff wishing to avoid the application of governmental immunity must present evidence about the characteristics of the imperfections complained of, and must show that, because of those characteristics, the imperfect road can no longer be said to be reasonably safe.

The city argues that plaintiff hardly presented evidence of any defect in the road at all, let alone a defect that made the road not reasonably safe and convenient for public travel. The city notes that the photograph that plaintiff presented to the trial court "appears to depict a small, rough patch of concrete," but the photograph "does not demonstrate a significant difference in elevation between the rough patch and the surrounding concrete, nor does it appear to depict loose pieces of stone, gravel, or concrete in the area." The city also notes that plaintiff did not submit any evidence or testimony indicating the size of the alleged defect, and that plaintiff's photograph appears to depict an area "only several inches in width and approximately one foot in length."

The city also argues that plaintiff did not present any evidence supporting her allegations that the alleged defect contained a "loose, rotted, and deteriorated section of concrete roadway," as alleged in her complaint. The city contends that the other materials that plaintiff submitted in opposition to the city's motion for summary disposition—her complaint and her presuit notice letter—contain only allegations, which turned out to be unsupported by the evidence that plaintiff ultimately submitted to the trial court.

---

[1] Section 2a of the statute addresses liability for sidewalks adjacent to a highway, and is not applicable here. MCL 691.1402a.

Viewing plaintiff's proffered photograph and deposition testimony in the light most favorable to her, plaintiff failed to establish a genuine issue of material fact regarding whether the road on which she fell contained a defect that rendered it not reasonably safe and convenient for public travel. Plaintiff expressly denied in her deposition that she saw any loose stones in the area of the road where she fell. Her photographic evidence provided the only evidence regarding the alleged defect on which her claim is based. This photograph was of low quality and did little to depict the physical attributes of the alleged defect. In short, a finder of fact would have to speculate regarding the alleged defect's size, texture, and elevation on the day of the incident. Given the inadequacy of plaintiff's proofs, plaintiff failed to demonstrate a genuine issue of material fact that a defect existed in the roadway that rendered the roadway not reasonably safe and convenient for public travel. See *Wilson*, 474 Mich at 168. Accordingly, the trial court erroneously denied the city's motion for summary disposition under MCR 2.116(C)(7).

### E. NOTICE OF THE ALLEGED DEFECT

The city next argues that it was entitled to summary disposition because plaintiff failed to establish that the city had sufficient notice of the alleged defect on which she tripped and fell, as required by MCL 691.1403. Even if the record evidence had raised a genuine issue of material fact regarding the existence of an actionable defect in the surface of the roadway, plaintiff's claim would nonetheless fail because she did not raise a genuine issue of material fact regarding whether the city had actual or constructive notice of the alleged defect and had a reasonable time to repair the defect before the injury took place.

As noted earlier, an injury is only compensable under the highway exception to governmental immunity when the responsible governmental agency is on notice of a defect that renders the highway not reasonably safe and convenient for public travel. *Wilson*, 474 Mich at 168.

> No governmental agency is liable for injuries or damages caused by defective highways unless the governmental agency knew, or in the exercise of reasonable diligence should have known, of the existence of the defect and had a reasonable time to repair the defect before the injury took place. Knowledge of the defect and time to repair the same shall be conclusively presumed when the defect existed so as to be readily apparent to an ordinarily observant person for a period of 30 days or longer before the injury took place. [MCL 691.1403.]

"Generally, the question whether a street defect, otherwise actionable against the municipality, 'has existed a sufficient length of time and under such circumstances that the municipality is deemed to have notice is a question of fact, and not a question of law.' " *Cruz v Saginaw*, 370 Mich 476, 481; 122 NW2d 670 (1963), quoting *Hendershott v Grand Rapids*, 142 Mich 140, 143; 105 NW 140 (1905).

In *Bernardoni v Saginaw*, 499 Mich 470, 471; 886 NW2d 109 (2016), the Michigan Supreme Court held that a photograph of a defect taken after an accident is not probative of the location's past condition and is "insufficient, without more, to forestall summary disposition" under the highway exception to governmental immunity. Here, the city cites *Bernardoni* to

support its argument that plaintiff has failed to show that the city was on actual or constructive notice of the alleged defect before her trip and fall.

In *Bernardoni*, the plaintiff was walking on a sidewalk and tripped on a 2.5-inch vertical discontinuity between adjacent sidewalk slabs. She sued the city, alleging that the sidewalk's hazardous condition had existed for more than 30 days before her fall. At her deposition, the plaintiff was unable to state how long the discontinuity had existed. The only relevant evidence that she submitted was three photographs of the defect taken about 30 days after the accident. *Id*. The trial court found plaintiff's photographs insufficient to establish the defect's origin and duration and granted summary disposition to the city. *Id*. at 471-472. On appeal, this Court held that summary disposition was improperly granted, noting the "high unlikeliness that sidewalk slabs could shift, wear, and accumulate debris with great rapidity" and concluding that "reasonable minds could differ as to whether the condition would have been present and readily apparent for at least 30 days before the injury." *Id*. at 472 (cleaned up). The Supreme Court reversed this Court's decision and reinstated the trial court's grant of summary disposition, holding that the plaintiff's photographs, alone, were not probative of the sidewalk's past condition and were "insufficient, without more, to forestall summary disposition." *Id*. at 471.

In this case, plaintiff testified that the alleged defect existed in the road in front of her church, a location that she frequently traverses. Plaintiff, therefore, could have sought affidavits from other churchgoers or church staff attesting to their observations regarding the length of time the alleged defect existed before her fall. Or, plaintiff could have obtained records from the city listing any complaints received regarding the location of plaintiff's fall and any efforts the city made to repair the street. Or, plaintiff could have offered expert testimony explaining that such a defect could have arisen only over an extended period of time. *Id*. at 476. Plaintiff chose not to do so; rather, plaintiff offered only poor-quality photographs taken after her trip and fall. The proffered evidence does not create a genuine issue of material fact regarding the issue of notice. "Without more, a jury has no basis for concluding that the defect was present for the requisite period of time." *Id*. Accordingly, the trial court erroneously denied the city's motion for summary disposition under MCR 2.116(C)(7).

## III. CONCLUSION

In light of our conclusion that plaintiff failed to establish a genuine question of material fact regarding the existence of an actionable defect of which the city had actual or constructive notice for the requisite period of time, we need not address the city's alternative argument that the plaintiff failed to plead her claim in avoidance of governmental immunity.

We reverse and remand with instructions for the trial court to enter an order granting summary disposition to the city. We do not retain jurisdiction. Defendant, having prevailed in full, may tax costs under MCR 7.219(F).

/s/ Christopher M. Murray
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

-10-